## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

WILLIAM D. DOWNING, on Behalf of
Himself and All Others Similarly
Situated,

            Plaintiff,

v.

FIDELITY NATIONAL TITLE
INSURANCE COMPANY, CHICAGO
TITLE INSURANCE COMPANY,
COMMONWEALTH LAND TITLE
INSURANCE COMPANY, FIRST
AMERICAN TITLE INSURANCE
COMPANY, AMERICAN GUARANTY
TITLE INSURANCE COMPANY, OLD
REPUBLIC TITLE INSURANCE
COMPANY, AND STEWART TITLE
GUARANTY COMPANY,

            Defendants.

Civil Action No.:  `3:15-cv-154-TCB`

–

Complaint – Class Action

Jury Trial Demanded

## <u>COMPLAINT</u>

Plaintiff William D. Downing, individually and on behalf of all others similarly situated, files his Complaint alleging a scheme to defraud buyers of title insurance throughout the State of Georgia against Fidelity National Title Insurance Company, Chicago Title Insurance Company, Commonwealth Land Title Insurance Company, First American Title Insurance Company, Old Republic Title

Insurance Company, Stewart Title Guaranty Company, and other named and unnamed co-conspirators. Plaintiff alleges the following upon personal knowledge as to his own acts and information and belief and investigation by counsel as to all other allegations.

In the midst of the Great Recession, the Defendants, who are the major title insurers in this state, faced a severe downturn in business. Instead of reducing their prices to meet lower consumer demand, the Defendants conspired to defraud consumers through a campaign of continuing misrepresentations to employees and agents that the title insurance companies were required by law to file rates with the Department of Insurance and required by law to charge those rates to the public. By eliminating all bargaining on rates, the Defendants were able to raise their list prices in 2009 and again in 2012.

Georgia is not a file-and-use state for title insurance. Title insurance is exempt from the chapter of the Georgia Insurance Code governing the regulation of rates. O.C.G.A. § 33-9-3. In fact, title insurance companies can charge different prices to different purchasers. Georgia Op. Atty. Gen. No. 83-31. This scheme has resulted in higher list prices and transaction prices for buyers of title insurance throughout the State of Georgia from 2009 to the present.

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff William D. Downing is a resident of Fayette County, Georgia.  He purchased title insurance from Fidelity National Title Insurance Company ("Fidelity") on or about May 25, 2012 for his residence in Fayette County, Georgia.

2.      Defendant Fidelity National Title Insurance Company ("Fidelity") is a California corporation with its principal place of business at 2510 N. Redhill Ave., Santa Ana, California 92705.  Fidelity has offices at 990 Hammond Drive, Suite 550, Atlanta, Georgia 30328 and may be served through its registered agent at CT Corporation System, 1201 Peachtree St., NE, Atlanta, Georgia 30361.

3.      Defendant Chicago Title Insurance Company ("Chicago Title") is a Nebraska insurance company with its principal place of business at 2510 N. Redhill Ave., Santa Ana, California 92705.  Chicago Title has offices at 4170 Ashford Dunwoody Road, Suite 460, Atlanta, Georgia 30319 and may be served through its registered agent at CT Corporation System, 1201 Peachtree St., NE, Atlanta, Georgia 30361.

4.      Defendant Commonwealth Land Title Insurance Company ("Commonwealth") is a Nebraska insurance company with its principal place of business at 2510 N. Redhill Ave., Santa Ana, California 92705.  Commonwealth

3

has offices at 4170 Ashford Dunwoody Road, Suite 460, Atlanta, Georgia 30319 and may be served through its registered agent at CT Corporation System, 1201 Peachtree St., NE, Atlanta, Georgia 30361.

5.     Defendant First American Title Insurance Company is a Nebraska insurance company with its principal place of business at 1 First American Way, Santa Ana, California 92707.  First American has offices at Six Concourse Parkway, Suite 2150, Atlanta, Georgia 30328 and may be served through its registered agent at Corporation Service Company, 40 Technology Parkway South, #300, Norcross, Georgia 30092.

6.     Defendant Old Republic National Title Insurance Company is a Minnesota insurance company with its principal place of business at 400 Second Avenue South, Minneapolis, Minnesota 55401.  Old Republic has offices at 1125 Sanctuary Parkway, Suite 140, Alpharetta, Georgia 30009 and may be served through its registered agent Timothy Minors at 1125 Sanctuary Parkway, Suite 140, Alpharetta, Georgia 30009.

7.     Defendant American Guaranty Title Insurance Company is an Oklahoma corporation with its principal place of business at 400 Second Avenue South, Minneapolis, Minnesota 55401.  American Guaranty has offices at 1125 Sanctuary Parkway, Suite 140, Alpharetta, Georgia 30009 and may be served

through its registered agent Timothy Minors at 1125 Sanctuary Parkway, Suite 140, Alpharetta, Georgia 30009.

8.     Defendant Stewart Title Guaranty Company is a Texas insurance company with its principal place of business at 1980 Post Oak Blvd., Suite 800, Houston, Texas 77056.  Stewart has offices at 200 Mansell Court East, Suite 400, Roswell, Georgia 30076 and may be served through its registered agent at CT Corp Systems, 2 Peachtree St., NE, Atlanta, Georgia 30383.

9.     Defendants are subject to the personal jurisdiction of this Court.

10.     This Court has diversity jurisdiction over the claims pursuant to 28 U.S.C. § 1332(d): Plaintiff is citizen of a state different from any defendant and the amount in controversy exceeds the value of $5,000,000, exclusive of interest and costs.

11.      Venue is proper in this district under 28 U.S.C. § 1391:  Defendants reside in the Northern District of Georgia, and a substantial part of the events giving rise to Plaintiff's claims occurred in the Northern District of Georgia, and substantial part of property that is the subject of the action is situated in the Northern District of Georgia.

## NATURE OF THE CASE

12.    The Real Estate Settlement Procedures Act ("RESPA") was enacted to encourage competition for provision of settlement services, including title insurance.  RESPA specifically prohibits a seller from requiring the buyer to use a particular title insurance company, either directly or indirectly, as a condition of sale.  12 U.S.C. § 2608.  Furthermore, the lender is required to provide a good faith estimate of the costs of title insurance and other settlement services to the borrower to allow the purchaser to shop for the lowest possible price.  12 U.S.C. § 2604(c).

13.    Since the inception of this scheme, the title insurance companies have collected more than one billion dollars in premiums written on title insurance in Georgia.  The three largest families of companies – Fidelity (Fidelity, Chicago Title, and Commonwealth), First American, and Old Republic (Old Republic and American Guaranty) – had a combined market share of more than 80% in Georgia for 2014.

14.    Georgia has never been a file-and-use state for title insurance.  Title insurance companies are not required to file their rates.  O.C.G.A. § 33-9-3(a)(6); Ga. Op. Atty. Gen. No. 83-31.  In addition, they are not required to charge their list price.  Title insurance companies are only required to charge the premium "fixed

by the insurer" <u>or</u> "specified in the policy."   O.C.G.A. § 33-6-5(6)(B)(i); Ga. Op. Atty. Gen. No. 83-31.

15.    Moreover, Plaintiff and its counsel cannot locate any record of an announcement by the Commissioner of Insurance to conduct hearings or make rules to effect such a change.   In fact, the National Association of Insurance Commissioners has indicated that title insurance rates "are not regulated" in Georgia.

16.    At the height of the Great Recession in early 2009, the major title insurers in this state – Fidelity, Chicago Title, Commonwealth, First American, Old Republic, American Guaranty, and Stewart – agreed that they would publish new list prices and refuse to discount off those list prices on the pretext that Georgia had become a file-and-use state for title insurance.   By representing that they were now required by law to charge the list prices for title insurance, they would prevent deterioration in the artificially inflated list prices.   They would also avoid the accusation that they were fixing prices in violation of state insurance regulations.   Multiple real estate law firms reported the agreement on their web sites at that time.

17.    Since February 2009, the Defendants have continually misrepresented to their employees and agents that they are required by law to charge list prices for

title insurance in Georgia.   As a result, the Defendants have eliminated price negotiations and raised list prices.   In other words, consumers are now being quoted an artificially inflated list price – with no opportunity to negotiate a lower price.

18.     Fidelity issued rate schedules and company bulletins to its employees and agents through use of interstate wires and interstate mail stating that they were required by law to charge the published rates effective March 1, 2009.  Based on a review of the database by counsel, the rate schedules were not filed with the Georgia Department of Insurance through the System for Electronic Rate and Form Filing ("SERFF").

19.     Chicago Title issued rate schedules and company bulletins to its employees and agents through use of interstate wires and interstate mail stating that they were required by law to charge the published rates effective March 1, 2009.  Based on a review of the database by counsel, the rate schedules were not filed with the Georgia Department of Insurance through the System for Electronic Rate and Form Filing ("SERFF").

20.     Commonwealth issued rate schedules and company bulletins to its employees and agents through use of interstate wires and interstate mail stating that they were required by law to charge the published rates effective March 1,

2009.  Based on a review of the database by counsel, the rate schedules were not filed with the Georgia Department of Insurance through the System for Electronic Rate and Form Filing ("SERFF").

21.    Old Republic issued rate schedules and company bulletins to its employees and agents through use of interstate wires and interstate mail stating that they were required by law to charge the published rates effective April 1, 2009.  Based on a review of the database by counsel, the rate schedules were not filed with the Georgia Department of Insurance through the System for Electronic Rate and Form Filing ("SERFF").

22.    American Guaranty issued rate schedules and company bulletins to its employees and agents through use of interstate wires and interstate mail stating that they were required by law to charge the published rates effective April 1, 2009.  Based on a review of the database by counsel, the rate schedules were not filed with the Georgia Department of Insurance through the System for Electronic Rate and Form Filing ("SERFF").

23.    Stewart issued rate schedules and company bulletins to its employees and agents through use of interstate wires and interstate mail stating that they were required by law to charge the published rates effective May 1, 2009.  Based on a review of the database by counsel, the rate schedules were not filed with the

9

Georgia Department of Insurance through the System for Electronic Rate and Form Filing ("SERFF").

24.    First American issued rate schedules and company bulletins to its employees and agents through use of interstate wires and interstate mail stating that they were required by law to charge the published rates effective June 1, 2009. Based on a review of the database by counsel, the rate schedules were not filed with the Georgia Department of Insurance through the System for Electronic Rate and Form Filing ("SERFF").

25.    Defendants have continued to this date to misrepresent in writing that they are required by law to charge the published rates.  For example, Defendants announced rate increases in the middle of 2012.  Fidelity, Chicago Title, and Commonwealth issued new rate schedules and company bulletins to their employees and agents through use of interstate wires and interstate mail stating that they were required by law to charge new published rates effective July 1, 2012.  Upon information and belief, First American, Old Republic, American Guaranty, and Stewart also issued new rate schedules and company bulletins to their employees and agents at that same time through use of interstate wires and interstate mail stating that they were required by law to charge new published rates.

26.     In many instances, their list prices are now identical to the penny.  For example, Fidelity, Chicago Title, Commonwealth, First American, and Old Republic each quoted a price of $488.75 for a lender's policy on the refinancing of a $195,000 loan on a residence in Fayette County, Georgia on October 2, 2015.

27.     During this entire period, Defendants, which are all foreign corporations, have received the proceeds of these transactions through the use of United States mail (including the Postal Service and private and commercial interstate carriers) and interstate wires.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action on behalf of persons who purchased title insurance in Georgia at any time from March 1, 2009 to the present (the "Class"). The "Class Period" is from March 1, 2009 to the present.

29.     The Class is so numerous that joinder of all Class members is impracticable.   Plaintiff believes that the Class contains more than 100,000 members and that the actual number of Class members can be ascertained through discovery.

30.     There are numerous questions of law and fact common to the Class, and their resolution will be material to the legal claims asserted.  These questions include, but are not limited to:

(a)     Did Defendants state that they were required by law to charge published rates for title insurance?

(b)     Did Defendants misrepresent, omit, or conceal material facts by stating that they were required by law to charge published rates for title insurance?

(c)     Were any misrepresentations or omissions by Defendants reasonably calculated to deceive persons of ordinary prudence?

(d)     Was it reasonably foreseeable that misrepresentations by Defendants would be sent over interstate wires?

(e)     Were any misrepresentations by Defendants sent across interstate wires for purposes of executing schemes to defraud?

(f)     Did Defendants intentionally participate in schemes to defraud and use interstate wires in furtherance of the scheme in violation of 18 U.S.C. § 1343?

(g)     Was it reasonably foreseeable that misrepresentations by Defendants would be sent by United States mail?

(h)     Were any misrepresentations by Defendants sent by United States mail for purposes of executing schemes to defraud?

(i)     Did Defendants intentionally participate in schemes to defraud and use United States mail in furtherance of the scheme in violation of 18 U.S.C. § 1341?

12

(j)     Have Defendants engaged in a pattern of racketeering activity under the state RICO statute?

(k)     Did the Defendants conspire to engage in a pattern of racketeering activity?

31.    The questions of law and fact common to all Class members predominate over any questions that may affect only individual Class members.

32.    A class action is a superior method of adjudicating the Class members' claims because individual actions would unnecessarily burden the Court and create the risk of inconsistent results.

33.    The claims of Plaintiff are typical of the claims of the Class members. Plaintiff and all putative Class members purchased title insurance and overpaid by reason of the statewide scheme by Defendants to make misrepresentations to agents in their networks.  Plaintiff has no interests that are antagonistic or adverse to the other Class members.

34.    Plaintiff will fairly and adequately protect the interests of the Class.

35.    Plaintiff is an adequate representative of the Class.  Plaintiff has retained counsel who is experienced in class action litigation, complex litigation, and RICO litigation.  Plaintiff and its counsel have engaged in a lengthy factual and legal investigation to develop this case.  Accordingly, Plaintiff will fairly and adequately protect and represent the interests of the Class.

36.     Plaintiff seeks certification of a class, alternatively, under Fed. R. Civ. P. 23(b)(2) or 23(b)(3), or a combination thereof.

37.     Defendants' misrepresentations have the effect of inflating prices for title insurance to the detriment of Plaintiff and all Class members.  Accordingly, declaratory and injunctive relief that prevents Defendants from continuing to misrepresent facts is appropriate on a Class-wide basis.

38.     Given the significant expense required to prosecute the foregoing claims against Defendants, the costs of individual actions may well approach or exceed the amount recovered in any individual action.  The expense of pursuing individual actions would require many individual Class members to forego their individual claims against Defendants if they are not permitted to pursue those claims as a class.

39.     This action is manageable because the evidence proving that Defendants is engaging in the alleged conduct is common to the Class. Furthermore, the identities of the Class members are known to Defendants.

## COUNT I

## Violation of O.C.G.A. § 16-14-4(a) (Georgia RICO Act)

40.     The foregoing allegations are incorporated by reference as if fully set forth herein.

41.     Defendants have engaged in an open and ongoing pattern of violations of 18 U.S.C. § 1341, 18 U.S.C. § 1343, and O.C.G.A. § 16-8-102 from March 1, 2009 to the present.   As part of the mortgage closing process, Defendants have continually misrepresented to their employees and agents that they are required by law to charge the published rates for title insurance in rate schedules and company bulletins sent through United States mail and interstate wires to their agents to eliminate discounts from list prices and facilitate increases in list prices on title insurance.   Defendants, who are all foreign corporations, have received the proceeds of these transactions through the use of United States mail (including the Postal Service and private and commercial interstate carriers) and interstate wires.

42.     Defendants are engaged in an ongoing pattern of racketeering activity as defined by O.C.G.A. § 16-14-3(8)(A).

43.     The pattern of racketeering activity consists of more than two acts of racketeering activity in furtherance of the scheme to defraud.  The last of such acts occurred within four years after the commission of a prior act of racketeering activity.

44.     Specifically, Defendants have violated and continue to violate 18 U.S.C. § 1341, which makes it a federal crime to intentionally participate in a scheme to defraud and use United States mail in furtherance of the scheme.  For more than six years, Defendants have intentionally made material

misrepresentations that they were required by law to charge the published rates for title insurance in Georgia that were reasonably calculated to deceive persons of ordinary prudence.  The United States mail was knowingly used in furtherance of those schemes.  Such use was reasonably foreseeable.

45.    Each violation of 18 U.S.C. § 1341 constitutes an act of racketeering activity under O.C.G.A § 16-14-3(9)(A)(xxix) and 18 U.S.C. § 1961(1)(B).

46.    Specifically, Defendants have violated and continue to violate 18 U.S.C. § 1343, which makes it a federal crime to intentionally participate in a scheme to defraud and use interstate wires in furtherance of the scheme.  For more than six years, Defendants have intentionally made material misrepresentations that they were required by law to charge the published rates for title insurance in Georgia that were reasonably calculated to deceive persons of ordinary prudence. The interstate wires were knowingly used in furtherance of those schemes.  Such use was reasonably foreseeable.

47.    Each violation of 18 U.S.C. § 1343 constitutes an act of racketeering activity under O.C.G.A § 16-14-3(9)(A)(xxix) and 18 U.S.C. § 1961(1)(B).

48.    Defendants have also violated and continue to violate O.C.G.A. § 16-8-102(1), which makes it a state crime to knowingly make any deliberate misstatement or misrepresentation during the mortgage lending process with the

intent to defraud and with the intention that it be relied on by any party to the mortgage lending process.

49.     Each violation of O.C.G.A. § 16-8-102 constitutes an act of racketeering activity under O.C.G.A § 16-14-3(9)(A)(xxxx).

50.     The acts of racketeering activity committed by Defendants have the same or similar methods of commission.   They involve misrepresentations that Defendants are required by law to charge the published rates for title insurance. They involve similar and sometimes identical language.

51.     The acts of racketeering activity committed by Defendants have the same or similar objective: inflate prices for title insurance and increase profits for the Defendants.

52.     The acts of racketeering activity committed by Defendants have the same or similar victims, including Plaintiff and other Class members.

53.     The acts of racketeering activity committed by Defendants are otherwise related by distinguishing characteristics including, but not limited to, the involvement of the four major families of title insurance in Georgia.

54.     Defendants' acts of racketeering activity involve a distinct threat of long-term racketeering activity.

55.     Defendants' practice of knowingly and intentionally misrepresenting that they are required by law to charge the published rates for title insurance in

Georgia has continued for at least six years, is ongoing at the present time, and will continue into the future unless halted by judicial intervention.

56.   Defendants' material misrepresentations that they are required by law to charge the published rates for title insurance in Georgia are part of its regular way of conducting business.

57.   In violation of O.C.G.A. § 16-14-4(a), the Defendants have acquired an interest in personal property, including money, through the pattern of racketeering activity described in this Complaint.

58.   Plaintiff and the other Class members have been injured by reason of Defendants' violations of O.C.G.A § 16-14-1 et seq. and have suffered actual damages, prior to trebling of damages, in an amount to be proven at trial.

59.   Under O.C.G.A. § 16-14-6(c), Plaintiff and the other Class members are entitled to threefold the amount of any actual monetary damages incurred as a result of Defendants' pattern of racketeering activity.

60.   Under O.C.G.A. § 16-14-6(c), Plaintiff and the other Class members are entitled to recover attorneys' fees and other costs from the Defendants.

61.   The acts and conduct by the Defendants as set forth above showed willful misconduct, malice, fraud, wantonness, oppression and an entire want of care that raises the presumption of conscious indifference to consequences and specific intent to cause harm, entitling Plaintiff and other Class members to receive

18

punitive damages sufficient to deter, penalize, or punish the Defendants in light of the circumstance of the case under O.C.G.A. § 16-14-6(c).

## COUNT II

### Violation of O.C.G.A. § 16-14-4(c) (Georgia RICO Act)

62.     The foregoing allegations are incorporated by reference as if fully set forth herein.

63.     The Defendants have conspired to violate the provisions of O.C.G.A. § 16-14-4(a).

64.     Plaintiff and the other Class members have been injured by reason of Defendants' violations of O.C.G.A § 16-14-4(c) and have suffered actual damages, prior to trebling of damages, in an amount to be proven at trial.

65.     Under O.C.G.A. § 16-14-6(c), Plaintiff and the other Class members are entitled to threefold the amount of any actual monetary damages incurred as a result of Defendants' pattern of racketeering activity.

66.     Under O.C.G.A. § 16-14-6(c), Plaintiff and the other Class members are entitled to recover attorneys' fees and other costs from the Defendants.

67.     The acts and conduct by the Defendants as set forth above showed willful misconduct, malice, fraud, wantonness, oppression and an entire want of care that raises the presumption of conscious indifference to consequences and specific intent to cause harm, entitling Plaintiff and other Class members to receive

punitive damages sufficient to deter, penalize, or punish the Defendants in light of the circumstance of the case under O.C.G.A. § 16-14-6(c).

## PRAYER FOR RELIEF

Plaintiffs respectfully ask that this Court:

(a)    enter an order certifying this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3);

(b)    conduct a jury trial of all claims and issues as to which there is a right to jury trial;

(c)    enter judgment awarding damages to the Plaintiffs and the class in an amount to be determined and trebled as provided in O.C.G.A. § 16-14-6(c);

(d)    enter permanent injunctive relief in favor of Plaintiffs and the class to prevent the threat of loss or injury by violation of the racketeering laws as provided in O.C.G.A. § 16-14-6(c);

(e)    award Plaintiffs the cost of this suit, including reasonable attorney's fees, as provided in O.C.G.A. § 16-14-6(c);

(f)    award punitive damages sufficient to deter, penalize, or punish the Defendants in light of the circumstance of the case under O.C.G.A. § 16-14-6(c); and

(f)    order any other and further relief as this Court deems proper and just.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial of their claims by jury to the extent authorized by law.

Respectfully submitted on October 2, 2015.

/s Jeff Berhold
Jeffrey L. Berhold
Georgia Bar No. 054682
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, GA 30309
(404) 872-3800 Telephone
(678) 868-2021 Fax
jeff@berhold.com


/s Tom Lacy
W. Thomas Lacy
Georgia Bar No. 431032
The Lacy Law Firm P.C.
P.O. Box 3078
Peachtree City, Georgia 30269
(770) 486-8445
(770) 486-8889
tlacy@lacyfirm.com


**COUNSEL FOR PLAINTIFF**